IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2016

**MICHAEL D. BOONE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010A266 Steve R. Dozier, Judge**
_____

**No. M2015-01200-CCA-R3-PC – Filed August 18, 2016**
_____

The petitioner, Michael D. Boone, appeals the denial of his petition for post-conviction relief. The petitioner pled guilty to possession with intent to sell or deliver .5 grams or more of a Schedule II drug (cocaine), a Class B felony, and possession with intent to sell or deliver between one-half ounce and ten pounds of a Schedule VI substance (marijuana), a Class E felony. He is currently serving an effective twenty-four-year sentence for these convictions. On appeal, the petitioner contends that his guilty pleas were not entered knowingly and voluntarily because he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel "battered [him] with tactics designed to scare or otherwise misinform" the petitioner, which resulted in his acceptance of the plea agreement. Following review of the record, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Holly L. Troutman, Nashville, Tennessee, for the appellant, Michael D Boone.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Glenn Funk, District Attorney General; and Rachel Sorbero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Factual Background and Procedural History

The facts underlying the petitioner's two convictions, as recited by the State at the guilty plea hearing, are as follows:

Had this case gone to trial, the State's proof would have shown that on November 4th, 2009, at approximately 9:49 p.m. detectives with the north crime suppression unit of the Metro police department executed a narcotics related search warrant at 1409 Jackson Street in Davidson County. When they made entry, they took both of these defendants into custody in their bedroom. They were both in bedroom Number 2 at that time. Ms. Lyons was in the bed, and [the petitioner] was between the dresser and the bed.

Shortly after police made entry, [the petitioner] began having fainting spells and was eventually transported to General Hospital. While waiting for the ambulance, the [petitioner] was informed that there were narcotics in the room and he stated multiple times, she doesn't have anything to do with this. He was then take[n] on to the hospital.

Ms. Lyons was Mirandized at 10:13 p.m. She stated that [the petitioner's] name was Jon. Police later determined that Jon was an alias due to the fact that [the petitioner] had some outstanding warrants.

When police interviewed Ms. Lyons, she said that they had been selling cocaine and marijuana on and off for about two and a half to three years. She stated that [the petitioner] sold about $300 per week in cocaine and about $100 per week in marijuana.

When the detective asked why they sold drugs, she told them it was because she was not thinking about her kids. Ms. Lyons does not have a job and had $672 on her at that time which she told police did belong to her. Ms. Lyons was also prepared to testify at the trial on Monday. And she would further state is that [s]he knew [the petitioner] was selling drugs

2

and that she knowingly received money and lived off of money that were proceeds from drugs although she did not herself engage in hand-to-hand transactions or set up these drug deals. Although she knew that it was going on and knowingly benefited from the proceeds of the drug dealing.

Police, when they continued executed the warrant recovered a number of items. They found a couple of different bags of marijuana. One was a bag that had 12 smaller bags of marijuana in it that weighed approximately 16 grams. They also located an area of the loose white rock substance - - actually they found that in a couple of locations. They also found a plastic baggie with a white rock substance in it. Then they found another bag that had a white rock and powder substance in it. These items were sent to the Tennessee Bureau of Investigation.

The lab confirmed that the marijuana was in fact marijuana. They weighed a total of 20.9 grams. And rock-and-powder-like substance did contain a cocaine base and weighed a total of 6.5 grams.

The petitioner, along with Ms. Lyons, was charged with possession with intent to sell more than .5 grams of a Schedule II controlled substance, cocaine, and possession with intent to sell less than ten pounds of a Schedule VI controlled substance, marijuana. Each chose to accept a plea offer from the State. At the guilty plea hearing, the trial court expressly confirmed that the petitioner understood the charges against him, the possible sentencing ranges for the crimes, the rights he would be waiving, and that he was satisfied with trial counsel's representation. The petitioner affirmatively responded to each question, indicating his understanding. Pursuant to his agreement, the petitioner received a sentence of twenty-four years, as a Range III offender, for the cocaine offense and a concurrent sentence of six years as a career offender for the marijuana offense. While the sentences were concurrent with each other, they were imposed to be served consecutively to the sentence for a parole violation in a separate case.

The petitioner's agreement also called for the reservation of a certified question of law regarding the denial of his motion to suppress. Prior to accepting the plea, the trial court reviewed the procedure for a certified question and made clear to the petitioner that he would be sentenced pursuant to the terms of the agreement unless the appeal was

3

successful. The petitioner indicated his understanding, as well as that he was voluntarily choosing to accept the agreement.

In the appeal of the certified question of law, the petitioner challenged the denial of his motion to suppress, arguing that the search warrant obtained in the case was not supported by probable cause. This court disagreed and affirmed the trial court's determination. *State v. Michael D. Boone*, No. M2011-02435-CCA-R3-CD, 2013 WL 2639145, at *1 (Tenn. Crim. App., June 10, 2013).

Thereafter, the petitioner filed a timely post-conviction petition for relief alleging that his plea was not entered knowingly and voluntarily based upon the ineffective assistance of counsel. Following the appointment of counsel, an amended petition for relief was also filed. A hearing was held at which the petitioner and trial counsel testified.

Trial counsel testified that he had worked as a public defender for nineteen years and that he had represented the petitioner in 2010. According to trial counsel, he was not the first public defender to represent the petitioner in this case. In addition to the petitioner's meeting with his previous attorneys, trial counsel testified that he himself had approximately ten meetings with the petitioner, as well as additional contact "through letters and through other means." During these meetings, the two discussed the facts of the case, possible defense strategies, potential plea offers, and negotiations with the State. On December 16, 2010, trial counsel had an hour-long video conference with the petitioner during which they discussed the petitioner's version of events, his exposure, the possible defense of simple possession, actual versus constructive possessions, a possible motion to suppress his statements, and a motion to suppress based on an invalid warrant. A motion to suppress based upon the search warrant was ultimately filed in the case, but it was denied.

Trial counsel testified that he and the State had discussed potential plea offers, but trial counsel knew that the facts of the case were not in the petitioner's favor. Trial counsel agreed that the petitioner "faced a very big risk" in the case if he went to trial because of certain factors, including that the petitioner had told arresting officers that the drugs belonged to him and not to Ms. Lyons. Additionally, trial counsel was concerned that if he raised the issue of identity, the State could be allowed to introduce evidence of the petitioner's prior drug sales.

4

In May of 2011, trial counsel sent the petitioner a letter explaining a plea offer made by the State. The letter stated that the terms of the agreement provided for the petitioner to plead guilty and receive a twenty-year sentence to be served at 45%. Trial counsel failed to include in the letter that the offer was premised on there being no certified question of law. He also failed to include a second part of the offer which offered the petitioner the chance to plead guilty, receive a twenty-five-year sentence at 45%, and to reserve a certified question of law. In August, trial counsel realized his omission. He subsequently had a twenty-five minute meeting during which he discussed the offer with the petitioner and the State. Following that meeting, the State's final offer, which was eventually accepted, provided for a sentence of twenty-four years at 45%. Trial counsel stated that he definitely would have explained the variances in the agreements to the petitioner.

Trial counsel testified that the petitioner had always wanted to pursue a plea agreement and not to go to trial. The petitioner informed trial counsel that he was willing to accept a twenty-year sentence at 30%, which the State refused to agree to. Trial counsel expressed the petitioner's attitude as one of "I will have a trial if I need to have a trial, but I would propose this in order to resolve it." Trial counsel had no recollection of the petitioner ever being adamant about proceeding to a trial. The case was set for trial, but trial counsel recalled "it was certainly a situation where we would continue to . . . negotiate with going back and forth in terms of trying to resolve it."

Trial counsel testified that the petitioner ultimately chose to accept the agreement providing for the effective twenty-four-year sentence to be served at 45%. Prior to the acceptance of the agreement, trial counsel spent forty-five minutes with the petitioner reviewing its terms. He stated he would have discussed the terms of the plea agreement, as well as all the options open to the petitioner. Trial counsel stated his practice was to read the entire petition to a defendant. He also reviewed the terms of the certified question of law which was being reserved as part of the agreement. Prior to meeting with the petitioner, trial counsel had met with appellate counsel for the public defender's office in order to ensure that the proper procedures were complied with. Trial counsel recalled that the petitioner was "very involved and detailed." Trial counsel stated that the petitioner wanted a copy of the petition and asked questions during the discussion.

Trial counsel acknowledged that he had concerns about the petitioner taking the case to trial. He noted the petitioner's high sentencing range and was concerned about the possible outcome. He did caution the petitioner about a trial "in the sense that he would receive a lot of time" if convicted. However, trial counsel was clear that it was not his decision whether to take the case to trial or accept the agreement. The decision was ultimately made by the petitioner.

Trial counsel did not recall ever telling the petitioner that he could receive a sixty-year sentence for the charges in this case if he went to trial. He did recall a letter written to the petitioner in which he explained to the petitioner that he could receive thirty years at 60% for count two if he was convicted. Trial counsel testified that he was aware that the petitioner was on parole or probation at the time the instant offenses were committed, so he supposed that may have played a part in the length of the total effective sentence as well.

Trial counsel did acknowledge that he informed the petitioner that the State might indict him on new charges if the case went to trial. According to trial counsel, other officers had said they had the petitioner's "stuff" because they were "actively doing other sales with him." Trial counsel testified that he did caution the petitioner about the danger of "opening the door" to this information or facing additional charges from the State if he proceeded to trial. Trial counsel did not tell the petitioner that the State definitely would bring new charges, only that it was a risk. Trial counsel did acknowledge that fear of facing additional charges could induce one to accept a plea agreement.

Trial counsel testified that the petitioner seemed to understand his communications regarding the case and the plea offers. He believed that the petitioner was "well on top" of the issues and was well aware of his rights. Trial counsel testified that he was ready to take the case to trial if the petitioner had chosen to do so.

Contrarily, the petitioner testified that he did not understand the consequences of his guilty pleas because he believed he was going to receive a twenty-year sentence. He did acknowledge that trial counsel had presented him with two plea offers, one of which included the reservation of a certified question of law, a concept which he stated he understood. According to the petitioner, trial counsel told him he needed to take the plea offer because he was a convicted felon, and the jury would believe a police officer over him. The petitioner stated that trial counsel told him, "[T]ake this time and stand for this

6

. . . [otherwise you are] looking to get at least 30 more years on them other three cases that they are supposed to have . . . ." The petitioner understood this to mean that the State would definitely bring additional charges against him if he failed to accept the plea agreement.

The petitioner stated that he in fact wanted to proceed to trial because he was not the person selling the drugs. He asserted that the apartment he was arrested in was not his and that he was only there to get high. He also accused the officers of making up the statements he made while in custody. He testified that when he told trial counsel this, trial counsel "basically threatened" him and told him that if he testified, who did he think the jury was going to believe - a police officer or a convicted felon. Despite this, the petitioner told trial counsel he wanted to go to trial, as the offer was for a twenty-five-year sentence and the maximum he could receive was thirty-year-sentence, only a five-year difference. The petitioner also stated that he told trial counsel to prepare him for trial, but trial counsel failed to do so. The petitioner felt that from their first meeting and through the representation, trial counsel was trying to get him to accept the plea offer and was not prepared for trial. He also denied that the two had met on ten occasions.

The petitioner did acknowledge a meeting with trial counsel during which they discussed a plea offer, but the petitioner stated that after he thought about the offer, he still wanted to go to trial because the officers found only a small amount of drugs. However, the petitioner claimed that trial counsel "kept on hollering [about his] past record and basically saying that [the petitioner] did not have a chance in the world going to trial and beating [his] case." Despite this, the petitioner testified he would have insisted upon going to trial had trial counsel not told him he could get a sixty-year sentence. The petitioner did not have a letter or other communication from trial counsel referencing a sentence of sixty years.

The petitioner did acknowledge that trial counsel discussed the case with him "quite a bit," including the pros and cons of proceeding to trial. He stated that trial counsel informed him that they could beat the case on appeal, but he acknowledged that "none of it is guaranteed" and that trial counsel never made any guarantees.

The petitioner testified that trial counsel had informed him that the plea offer contained a sentence which was to be served at 35%, but he came back at the last minute and changed it to 45%. He also denied that trial counsel had discussed with him that he

7

would be sentenced as a career offender on one of the charges. He further charged that trial counsel had read him only part of the plea agreement. He believed that trial counsel "gave [him] no choice" but to accept the plea offer. He again referenced the fact that he felt trial counsel "basically" threatened him when he told him a jury would believe the police. When further questioned on the matter, he acknowledged that trial counsel actually did not threaten him, but he stated that trial counsel said it in a "threaten[ing] tone."

The petitioner also testified that trial counsel came to him with the plea offer on the day of trial. However, he was forced to acknowledge that he pled guilty on October 5, seven days before his trial was scheduled to start on October 12.

The petitioner agreed that he went before the trial court and swore to tell the truth. At the post-conviction hearing, however, he stated that he did not tell the trial court the truth when he stated that he "under[stood] everything." When the post-conviction court asked the petitioner exactly what it was he did not understand, the petitioner replied that he did not know he was going to be "careered out" on his six-year sentence. However, he acknowledged that, because that sentence was to be served concurrently with his twenty-four year sentence, it had no actual impact on the time he would serve.

The petitioner acknowledged that he told the trial court that he was pleased with his trial counsel's performance, that entering a guilty plea was his choice, and that no one had forced him into entering the plea. At the post-conviction hearing, he testified that these statements were lies. He again stated he was willing to proceed to trial but felt threatened by trial counsel's statements regarding who the jury would believe.

It was established that the petitioner had pled guilty in ten prior felony cases. Only in one other case, for felony evading arrest, did the petitioner actually proceed to trial.

After hearing the testimony and evidence presented, the post-conviction court took the matter under advisement. The court subsequently entered a written order denying relief. The petitioner has timely appealed.

**Analysis**


On appeal, the petitioner contends that his guilty pleas were entered without a full understanding of the nature of the consequences of accepting the pleas and, further, that he entered the agreement under duress and coercion based upon trial counsel's erroneous and threatening statements. Essentially, the petitioner is contending that his guilty plea were not entered knowingly and voluntarily based upon the ineffective assistance of counsel.


In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner,* 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State,* 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed,


> a court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.


*Blankenship v. State,* 858 S.W.2d 897, 904 (Tenn. 1993).


Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be made voluntarily and intelligently. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (citing *Alford,* 400 U.S. at 31). To succeed in a challenge for ineffective assistance of counsel, the petitioner must

9

demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland,* the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart,* 474 U.S. at 59; *see also Walton v. State,* 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State,* 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State,* 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

In its order denying relief, the post-conviction court stated as follows:

The petitioner's pro se and amended petitions allege that he is entitled to relief based upon the ineffectiveness of counsel. Specifically, he alleges that his plea was not knowingly entered because trial counsel did not adequately explain the nature and consequences of the plea. He alleges that counsel told him that his plea would result in a twenty[-]year sentence. The Court accredits the testimony of trial counsel that he discussed the terms of the plea with the petitioner before and on the day of the plea. Trial counsel also testified that the petitioner understood the plea discussions. At the plea proceeding, the Court detailed the terms of the plea agreement and the petitioner said that he understood. . . . . The petitioner also told the Court that he went over the plea agreement document with his attorney. . . .

10

The petitioner has failed to prove this allegation by clear and convincing evidence. The issue is dismissed.

The petitioner also alleges that his plea was not voluntary because trial counsel made inflammatory statements to him and threatened him with sixty years at 65% if he went to trial. The Court accredits the testimony of trial counsel, that he did not tell the petitioner he would get sixty years if he went to trial. The Court did not hear any evidence that trial counsel made threatening statements. At the plea, the petitioner said that his attorney had discussed and gone over the charges with him. . . . The petitioner also said that no one was forcing him to enter the plea. . . . The Court finds that the petitioner made a knowledgeable plea based on good advice from his attorney. The petitioner has failed to prove this allegation by clear and convincing evidence and has not shown any prejudice. The issue is dismissed.

. . . .

The petitioner's pro se petition alleges that he is entitled to relief based on illegal evidence obtained pursuant to the search warrant. The Court has heard this issue in the motion to suppress and reaffirms its finding that there was no error. The issue has also been addressed and affirmed on appeal. The petitioner has failed to prove this allegation by clear and convincing evidence. The issue is dismissed.

The Court finds that the petitioner's issues are without merit, the petitioner has failed to meet his burden by clear and convincing evidence, and he has not demonstrated any prejudice. Therefore, the petition for post-conviction relief is hereby *denied*.

Again, on appeal the petitioner argues that the "evidence adduced at the evidentiary hearing established that the [petitioner] received ineffective assistance of counsel from [trial counsel] and that he entered the plea agreement without fully understanding the nature and consequences of what he was doing. Furthermore, the

11

record established that the [petitioner] entered his plea under duress and coercion emanating from erroneous statements from [trial counsel.]" He claims that the record establishes that trial counsel "battered the [petitioner] with tactics designed to scare or otherwise misinform the [petitioner] generally." Specifically, he relies upon the letter sent by trial counsel which erroneously conveyed the plea offers made by the State, as well as the three-month delay in correcting the information. Lastly, he faults trial counsel for consistently telling him that he could spend sixty years in jail if he chose to go to trial and the State chose to indict for other separate offenses and that the co-defendant would testify against him. He claims he was barraged on the day of the plea hearing with all this information, leading him to accept the plea agreement because he also felt trial counsel had not prepared him for trial or discussed defenses. The petitioner claims he was in an "unprepared and panicked state," and he was "not armed with the required information necessary to make a rational and informed decisions about his plea agreement."

Upon review, we conclude that the only evidence contained in the record supporting the petitioner's contentions is his own testimony. However, the ruling by the post-conviction court clearly indicates that the court did not accredit the petitioner's testimony, as the court specifically stated that it was accrediting the testimony of trial counsel, which stands in contradiction to the testimony given by the petitioner. This court has noted on countless occasions that it is not the province of this court to re-weigh or re-evaluate such determinations made by a trier of fact. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). It is the trier of fact who is best suited to make these determinations because they are in a position to actually hear the testimony and observe the witness's demeanor during such testimony. Pursuant to this well-established law, the petitioner is left with no evidence to support his contentions.

Nothing in the record preponderates against the findings of the post-conviction court. Trial counsel testified that he met with the petitioner on multiple occasions and discussed the strength of the case, possible defenses, motions to file, and plea negotiations. Trial counsel did acknowledge that he sent a letter to the petitioner which initially did not correctly contain the entire plea offer from the State. However, he testified that he subsequently corrected that mistake and met with the petitioner and reviewed the actual offer which had been made. The initial letter was sent in May, the error was discovered and explained to the petitioner in August, and it was not until October that the pleas were actually entered. The petitioner was thus well aware of the terms being offered by the State prior to his acceptance of the guilty pleas.

12

With regard to the contention that trial counsel consistently told the petitioner he would get a sixty-year sentence if the State chose to indict in other cases, trial counsel testified that he did not recall ever telling the petitioner this. Again, the court accredited this testimony. There is absolutely nothing in the record which would support the petitioner's claim.

Trial counsel specifically testified that he had reviewed the plea offer with the petitioner on numerous occasions. Indeed, trial counsel stated that he spent forty-five minutes with the petitioner just prior to the acceptance of the agreement. The trial court explained the terms of the agreement quite clearly to the petitioner at the guilty plea hearing, and he indicated that he understood. The court was very explicit at the guilty plea hearing, and the petitioner affirmatively replied that he understood the agreement, was not being forced or coerced, and was pleased with the performance of his trial counsel. Thus, the petitioner's own testimony lends credence to trial counsel's version of the events. The petitioner may not now disavow his sworn testimony simply because he is unhappy with the bargain which he received.

Because nothing in the record preponderates against the findings of the post-conviction court, we conclude that the petitioner is not entitled to relief. The denial of the petition was proper.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

13